## PATTY vs. MILNE.

Where a party gives an acceptance for the *accommodation* of another, who passes it to his creditor to apply in payment of a note, and the creditor procures the acceptance to be discounted, and transmits its avails to the acceptor, with instructions to apply the same to the payment of the note, who, instead of doing so, applies them to a general account he holds against the drawer, an action lies in favor of the creditor against the acceptor, for so much money had and received, notwithstanding that the acceptance was mere accommodation paper, and that the acceptor at maturity was obliged to, and actually did pay the acceptance.

This was an action of *assumpsit*, tried at the New-York circuit in December, 1834, before the Hon. OGDEN EDWARDS, one of the circuit judges.

Bostwick, Gregory & Co., a mercantile firm at Montreal, gave their note to the plaintiff for one thousand dollars, payable 15th September, 1833, at the office of the defendant, in the city of New-York. The note was endorsed by the plaintiff, discounted at a bank in Utica, and sent to

New-York for collection. Shortly previous to its falling due, *Bostwick, Gregory & Co.* transmitted to the plaintiff their *note* for five hundred dollars, and an *acceptance* of the defendant for five hundred dollars more, each payable in ninety days, to enable the plaintiff to take up the one thousand dollar note. The plaintiff procured the five hundred dollar note, and the acceptance to be discounted at the same bank in Utica, and requested the cashier to send a draft for one thousand dollars to the defendant, which was done accordingly, with directions to account to the plaintiff, who advised the defendant by letter that the draft of one thousand dollars transmitted by the cashier came through him from Bostwick, Gregory & Co., and that it was forwarded for the purpose of paying the one thousand dollar note due 15th September. The defendant received the draft, and applied the avails to a general account against Bostwick, Gregory & Co. The one thousand dollar note was protested, and the plaintiff was obliged to take it up; and the acceptance, when it fell due, was paid and taken up by the defendant. The defendant *offered to prove* that the acceptance of five hundred dollars was given by him for the *accommodation* of Bostwick, Gregory & Co.; that at the time the draft was received by him, that firm was indebted to him in the sum of nine thousand dollars, and their credit was doubtful; that after crediting the money received on the draft, they still remain indebted to him eight thousand dollars, which was compromised in *October*, 1833, by the payment of fifty cents on the dollar, without any complaint from the plaintiff of misappropriation of the one thousand dollars received on the draft; and that this suit was commenced in *February*, 1834, without any previous notice of dissatisfaction or demand of the money; which evidence the judge refused to receive, and the jury, under his direction, found a verdict for the plaintiff for the one thousand dollars and interest. The defendant moved for a new trial.

*I. L. Wendell*, for the defendant.

*M. T. Reynolds*, for the plaintiff.

*By the Court,* BRONSON, J.   The judge decided correctly. The one thousand dollars, sent to the defendant on the 10th of September, 1833, was the money of the plaintiff, and he had a perfect right to direct its application. The defendant received the money to the plaintiff's use, and had no more right to apply it on the account of *Bostwick, Gregory & Co.* than he had to make any other disposition of the amount for his own benefit.   He received the draft through the cashier of the bank, with advice that he was to account for the money to the plaintiff.   He also received specific instructions from the plaintiff as to the application of the money, and then deliberately misappropriated the amount; and the plaintiff, after protest, was obliged to pay and take up the note.   His right of action was then complete.

The fact that the defendant credited the money to *Bostwick, Gregory & Co.*, and afterwards allowed the amount in a settlement with them, cannot alter the case.   He had done a wrong to the plaintiff, and could not discharge himself from liability by any subsequent transaction with third persons.   If he has lost the whole or any part of the money, the loss is his own, and he cannot throw it off upon another.   Nor could he, by misapplying the money, and suffering the note to go back protested, render it incumbent on the plaintiff to give notice that he should insist on his rights.   If the plaintiff knew, in September, that the money had been misapplied, neither his subsequent silence, nor his omission to sue for five months could discharge the defendant.   But although the note came back protested, and the plaintiff took it up on the 26th of September, it does not appear that he then knew what had become of the money he had remitted.   He may not have ascertained that fact until the suit was instituted in February.

A demand, before suit brought, was not necessary.   If, for any reason not growing out of his misconduct, the defendant had been unable to apply the money according to instructions, he should have been requested to refund.   A demand might then have been necessary to put him in the wrong.   But here he was wrong from the outset, and a re-

quest to refund the money before suit brought was unnecessary.

It is said that the five hundred dollars, paid by the defendant on his acceptance, was not the money of the plaintiff, and that as to so much the verdict was clearly wrong. The objection cannot be maintained. It was the duty of the makers to take up the note at maturity. Instead of sending the money, they forwarded other paper, which the plaintiff procured to be discounted on his own credit and for his own benefit. The avails of the new paper were as much the plaintiff's money, for the purpose of taking up the note, as were the funds which he raised on his own note, discounted at the same time. If he had not taken up the original note, he would have been answerable over to *Bostwick, Gregory & Co.* for the amount of the new securities. But he did take it up. The defendant accepted the five hundred dollar draft for the accommodation of the drawers, but it does not appear that the plaintiff knew any thing about the transactions between *Bostwick, Gregory & Co.* and the defendant. The money to take up the original note was not sent to the defendant on account of any supposed connexion or business transactions between him and the makers, but simply because the note was payable at the defendant's office. The question is the same that it would have been, if the five hundred dollar draft had been made on funds in the hands of the defendant, or had been drawn on some third person, and paid for the accommodation of the drawers. If the draft had not been accepted and paid, the plaintiff would have been obliged to take it up as endorser. But having been paid, it was his money for the purpose of taking up the note.

New trial denied.